**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

*07 C 6444*

Page 2

AMENDED

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
### SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District OF ILLINOIS, WESTERN DIVISION |
|---|---|
| Name (under which you were convicted): DESI CANO | Docket or Case No.: 98CR-712-1 |
| Place of Confinement: Duluth Federal Prison Camp P.O. Box 1000 Duluth MN 55814 | Prisoner No.: 10121-424 |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
| v. | DESI CANO |

## MOTION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging: _____
    U.S. District Court For The North District Of Illinois, 219 South Dearborn St.
    Chicago Illinois 60604

    (b) Criminal docket or case number (if you know): __98CR-712-1__

2.  (a) Date of the judgment of conviction (if you know): __February 19, 1999__

    (b) Date of sentencing: __February 19, 1999__

3.  Length of sentence: __210 Months__

4.  Nature of crime (all counts) (1)Conspiracy To Distribute Controlled Subestance & Aid & Abet
    (2)Communications Facility Controlled Substance Aid & Abet
    Four Counts Of Conspiracy To Distribute Cocaine, Three Counts Of Communications
    Facility Controlled Substance Aid & Abet.

5.  (a) What was your plea? (Check one)
    (1) Not guilty ☐     (2) Guilty ☒☒☒     (3) Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count
    or indictment, what did you plead guilty to and what did you plead not guilty to? __Entered A Guilty__
    Plea To Counts One And Four; Conspiracy To Distribute Approximately 100
    Kilograms Of Cocaine and Aiding And Abetting.

6.  If you went to trial, what kind of trial did you have? (Check one)     Jury ☐     Judge only ☐
    N/A

Page 3

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☒XX

8.  Did you appeal from the judgment of conviction?    Yes ☐    No ☒XX

9.  If you did appeal, answer the following:

    (a) Name of court: _____ N/A _____

    (b) Docket or case number (if you know): _____

    (c) Result: _____ N/A _____

    (d) Date of result (if you know): _____

    (e) Citation to the case (if you know): _____

    (f) Grounds raised: _____ N/A _____

    _____ N/A _____

    _____

    _____

    _____

    _____

    (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☒XX

    If "Yes," answer the following:

    (1) Docket or case number (if you know): _____ N/A _____

    (2) Result: _____

    _____ N/A _____

    (3) Date of result (if you know): _____

    (4) Citation to the case (if you know): _____

    (5) Grounds raised: _____ N/A _____

    _____

    _____

    _____

    _____

    _____

    _____

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☐    No XXX

11. If your answer to Question 10 was "Yes," give the following information:

    (a)  (1) Name of court: _____ N/A _____

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____ N/A _____

(5) Grounds raised: _____

_____

_____

_____ N/A _____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or

application?    Yes ☐  No ☐

(7) Result: _____ N/A _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____ N/A _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____ N/A _____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or

application?    Yes ☐  No ☐

(7) Result: _____ N/A _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your

motion, petition, or application?

(1) First petition:    Yes ☐  No ☐    N/A

(2) Second petition:    Yes ☐  No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: _____

N/A

_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

GROUND ONE: DESI CANO EXERCISED DUE DILEGENCE IN PROCEEDING WITH HIS § 2255 MOTION PURSUANT TO 28 U.S.C. § 2255

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Mr. Desi Cano contends that he has exercised due diligence in filing this Petition and discoverying the facts supporting his claim he has raised herein and should permit his issues to be entertained and decided on it's merits rather than on the timeliness of his petition.

Please See Attached Memorandum Of Law For More Details.

(b) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No XXX

(2) If you did not raise this issue in your direct appeal, explain why: _____

There was no need to raise this issue on direct appeal, since Due diligence under 28 U.S.C. § 2255 § 6(4) only applies to Post-Conviction Remedies.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes XX    No ☐    The instant one

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ___28 U.S.C. § 2255___

Name and location of the court where the motion or petition was filed: _____

This Honorable Court.

Docket or case number (if you know): _____

Date of the court's decision: _____ **N/A** _____

Result (attach a copy of the court's opinion or order, if available): _____

_____ **N/A** _____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ☐   No ☐     **N/A**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☐   No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____ **N/A** _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____ **N/A** _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: _____

_____

_____

_____ **N/A** _____

GROUND TWO: _____ DESI CANO WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL
WHEN HIS DEFENSE ATTORNEY S FAILED TO FILE A NOTICE OF APPEAL WHEN SPECIFICALLY INSTRUCTE

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
  Desi Cano asserts that his defense attorneys Kevin Bolger's and Robert

  Lucenti violated his constitutional right to a direct appeal, when he

  specifically instructed them to file a timely notice of appeal and they

  failed to do so.

Please See Attached Memorandum For More Details _____

_____

_____

**(b) Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No XXX

(2) If you did not raise this issue in your direct appeal, explain why: _____

Defense Attorneys were ineffective for failing to file a notice of appeal

when specifically instructed _____

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes XX   No ☐   The instant one

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ___28 U.S.C. § 2255_____

Name and location of the court where the motion or petition was filed: _____

This Honorable Court _____

Docket or case number (if you know): _____

Date of the court's decision: _____N/A_____

Result (attach a copy of the court's opinion or order, if available): _____

_____N/A_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐        N/A

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐        N/A

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☐        N/A

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____N/A_____

Docket or case number (if you know): _____

Date of the court's decision: _____N/A_____

Result (attach a copy of the court's opinion or order, if available): _____

_____N/A_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

N/A

_____

_____

_____

_____

**GROUND THREE:** DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO FURNISH, READ AND DISCUSS THE PRESENTENCE INVESTIGATION REPORT WITH DESI CANO

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Desi Cano was never furnished with his Presentence Investigation Report, nor did he have the opportunity to read it and discuss it with his defense attorney

Please See Attached Memorandum For More Details.

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No **XXX**

(2) If you did not raise this issue in your direct appeal, explain why: _____

Defense counsel was ineffective for failing to file a notice of appeal with specifically instructed to do so

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes **XXX** No ☐

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: 28 U.S.C. § 2255(This Instant One)

Name and location of the court where the motion or petition was filed: _____

This Honorable Court

Docket or case number (if you know): N/A

N/A

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____ **N/A** _____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑       **N/A**

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑       **N/A**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑       **N/A**

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____ **N/A** _____

Docket or case number (if you know): _____

Date of the court's decision: _____ **N/A** _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____ **N/A** _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: _____ **N/A** _____

_____

_____

_____

_____


**GROUND FOUR:** ___ NO GROUND FOUR _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____ **N/A** _____

_____

_____

_____

_____

_____
_____ N/A _____
_____

**(b) Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

N/A

Yes ☐  No ☐

(2) If you did not raise this issue in your direct appeal, explain why: _____
_____ N/A _____
_____

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

N/A

Yes ☐  No ☐

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____ N/A _____

Name and location of the court where the motion or petition was filed: _____
_____

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____
_____ N/A _____
_____

(3) Did you receive a hearing on your motion, petition, or application?

N/A

Yes ☐  No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

N/A

Yes ☐  No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐  No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

N/A

Name and location of the court where the appeal was filed: _____
_____ N/A _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available): _____
_____ N/A _____
_____

N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: _____

_____**N/A**_____

_____

_____

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?

If so, which ground or grounds have not been presented, and state your reasons for not

presenting them: __**All the issues raised herein have not been presented in**__

__**federal court due to attorneys ineffective assistance of counsel.**__

_____

**Please See Attached Memorandum For More Details**

_____

_____

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court

for the judgment you are challenging?      Yes ❑   No ☒XXX

If "Yes," state the name and location of the court, the docket or case number, the type of

proceeding, and the issues raised. _____**N/A**_____

_____

_____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following

stages of the judgment you are challenging:

(a) At preliminary hearing: ___**Joseph R. Lopez, 53 West Jackson, Suite 1102**____
   **Chicago Illinois 60604**

(b) At arraignment and plea: **Robert Charles Lucenti, 6832 W. North Avenue, Chicago Ill**
60604 And  **Kevin P. Bolger 150 N. Wacker Drive, Suite 2460, Chicago Ill 60606**

(c) At trial: _____**N/A**_____-_____

(d) At sentencing: _____**Robert Charles Lucenti, 6832 W. North Avenue, Chicago Ill**
60604 And  **Kevin P. Bolger 150 N. Wacker Drive, Suite 2460, Chicago Ill 60606**

(e) On appeal: _____
                    **NONE**

(f) In any post-conviction proceeding: _____
                    **Pro-Se**

(g) On appeal from any ruling against you in a post-conviction proceeding: _____
                    **N/A**
_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?    Yes **XX** No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐ No **XXX**

    (a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____**N/A**_____

    (b) Give the date the other sentence was imposed: __**N/A**_____

    (c) Give the length of the other sentence: _____**N/A**_____

    (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐    No ☐  **N/A**

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*_____

_____

_____

Desi Cano contends here that his instant motion should be considered timely filed pursuant to 28 U.S.C. ¶ 6(4) because he exercised due diligence in discoverying the facts supporting his issues raised herein as his Memorandum In Support Attached herein reflects.

Please See Attached Memorandum In Support For More details Why This Petition Should Be Held Timely Filed

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
   (1) the date on which the judgment of conviction became final;
   (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
   (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: ___Grant an evidentiary hearing to determine whether Desi Cano has exercised due diligence in filing the instant motion or find that Desi Cano has exercised due diligence in filing his petition and permit his issues raised herein to be entertained and adjudicated on its merits rather than the timeliness of the petition

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on 12/4/07 _____ (month, date, year).

Executed (signed) on 12/4/07 _____ (date).

*Desi Cano*
_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion. _____

_____

_____

IN FORMA PAUPERIS DECLARATION

_____
[Insert appropriate court]

* * * * *

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DESI CANO,

        Petitioner,

          -v-

UNITED STATES OF AMERICA,

        Respondent,

District Court Docket No.# 98CR-712-1

Honorable Suzanna B. Conlon

**MOTION TO VACATE, SET ASIDE OR
CORRECT SENTENCE PURSUANT TO 28
U.S.C. § 2255 ¶ (6)(4)**

. . . . . . . .

### INTRODUCTION

Desi Cano hereinafter ("Petitioner" or "Cano) is a federal prisoner serving out a Two-Hundred And Ten (210) month sentence at the Federal Prison Camp Of Duluth In Duluth Minnesota for violating the Substance Abuse Act. Specifically for Conspiring To Possess With Intent To Distribute approximately 100 kilograms of cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1).

Mr. Cano here requests and moves this Honorable Court to vacate, set aside or correct his sentence Pursuant to 28 U.S.C. § 2255 ¶ (6)(4) based on his exercise of due diligence in discoverying his defense counsel's deceitfulness in his court performances, which resulted in depriving Mr. Cano of his right to a direct appeal, 2255 post-conviction remedy and a Writ of Certiorari to the United States Supreme Court.

A memorandum brief in support of this motion is made part of this motion by reference herein.

                                  Respectfully Submitted

                                  Desi Cano- Pro-Se
                                  Reg# 10121-424-Dorm-208
                                  Duluth Federal Prison Camp
                                  P.O. Box 1000
                                  Duluth MN 55814

MEMORANDUM BRIEF OF LAW IN SUPPORT FOR MOTION
PURSUANT TO 28 U.S.C. ¶ (6)(4)

## I.  STATEMENT OF THE CASE

On October 1, 1998, a special Grand Jury for the Northern District Of Illinois
returned a seven-count indictment which charged Desi Cano and five other defendants
with conspiracy to possess and possession with intent to distribute cocaine, and
utilization of a communication facility in the commission of a narcotic offense in
violation of 21 U.S.C. §§ 846, 841(a)(1) and 843(b). On November 12, 1998 Desi Cano
appeared before the Honorable Suzanne B. Conlon to enter a plea of guilty to Counts
One and Four of the indictment.

Count One charged that in or before January, 1998 until on or about May 26, 1998
at Chicago Illinois, Cicero and Bensenville in Illinois and at Donna Texas and Mexico,
Desi Cano and his five co-defendants conspired knowingly and intentionally to possess
with intent to distribute cocaine a Schedule II Narcotic Drug Controlled Substance in
violation of 21 U.S.C. § 846.

Count Four charged that on or about May 26, 1998 Desi Cano, Jorge O'Conner, Juan
Manual Perez, and Guillermo Carrera knowingly and intentionally possessed with intent
to distribute approximately 100 kilograms of cocaine in violation of 18 U.S.C. § 841
(a)(1) and 2.

Mr. Cano's entry into his plea of guilty was without the benefit of a written plea-
agreement. On February 19, 1999 Mr. Cano was sentenced to 210 months imprisonment
to be followed with life supervision by the Honorable Suzanne B. Conlon. After sen-
tencing Mr. Cano specifically instructed his attorneys Robert Charles Lucenti and
Kevin Bolger's to file a timely notice of appeal and challenge the sentence imposed.
Specifically, the two-level enhancement for the role in the offense and the life super-
vision which the sentencing court erroneously imposed on Mr. Cano as a first time
offender. Defense counsel Robert Lucenti's reply to Mr. Cano's instructions was
"there is other more productive methods in having the sentence reduced, but an appeal
is not one of them."[1] Mr. Cano nonetheless insisted in appealing his sentence.
This motion Pursuant to 28 U.S.C. § 2255 ¶ (6)(4) followed.

---

1. What Robert Lucenti actually meant about "other more productive methods" was
   that the U.S. Attorneys Office would be compelled to file a reduction of sentence
   as promised. Mr. Cano will provide evidence in the form of recorded telephone
   conversations and affidavits reflecting that a sentence reduction promise by the
   U.S. Attorney's office existed.

## LEGAL ARGUMENTS

**GROUND ONE:**

### DESI CANO EXERCISED DUE DILEGENCE IN PROCEEDING WITH THIS § 2255 MOTION PURSUANT TO 28 U.S.C. § 2255

Prior to the enactment of the Antiterrorism And Effective Death Penalty Act Of 1996 also known as the ("AEDPA"), there was no statute of limitations for filing a § 2255 motion. Under the new law, a one year limitation period applies. The period runs from the latest of four events:

(1) The date on which the judgment of conviction becomes final:

(2) The date on which the impediment to making a motion created by the governmental action in violation of the constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) The date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255

Mr. Desi Cano contends here that this motion should be deem timely filed pursuant to 28 U.S.C. § 2255 ¶ 6(4), because Mr. Cano exercised due diligence in discovering the facts supporting his claims, and his motion was filed within one-year of the date on which he discovered those facts as the following will reflect.[2]

---

2. It should be noted for the record that if this court determines that the United States Attorneys Office is at fault for promising Desi Cano an unfulfillable promise(Sentence Reduction) which in turn prevented Mr. Cano from filing his direct appeal and § 2255 petition, 2255 ¶ 6(2) should be also considered in determining that Desi Cano's § 2255 motion is timely filed.

Prior to Desi Cano entering into his guilty plea and subsequently being sentence attorney Kevein Bolger's and Robert Lucenti informed Cano that they had received a proposition from the United States Attorney, which consisted of Mr. Cano entering into a guilty plea with the government without the benefit of a written plea-agreement and timely providing the government with a proffer session, which in return the United States Attorney would promise Mr. Cano a sentence reduction in the future which would guarantee Mr. Cano a sentence of no more than ten(10) years incarceration.

Mr. Desi Cano agreed to accept and comply with the United States Attorneys tangible proposition and agreement which according to his attorneys Kevin Bolger's and Robert Lucenti was conveyed to him from the United States Attorneys office. Along with the ten year sentence guarantee the United States Attorneys proposition also included a stringent stipulation which prohibited Mr. Cano from revealing or discussing the United States Attorneys proposition with the courts. Therefore, based on the U.S. Attorneys proposition and Mr. Cano's acceptance of the Proposition Mr. Cano did not discuss or reveal to the courts the arrangements which were made between the United States Attorney and himself nor did Mr. Cano utter a single word of this agreement at his sentencing allocation or at his change of plea hearing.

Upon Desi Cano's incarceration he diligently kept in constant contact with his defense attorneys Bolger and Lucenti through letters and telephone calls inquirying of the sentence reduction which was promised to him by the United States Attorneys office in exchange for his guilty plea. Please See Attached Letters And Desi Cano's Sworn Affidavit Attached For Easy Reference.

Unfortunately for Mr. Cano defense attorney Bolger's and Lucenti never legally corre-sponded through letters with Mr. Cano regarding the United States Attorneys sentence reduction agreement. Nonetheless, Bolger's and Lucenti did assure and guarantee Mr. Cano and various of his family members over numerous phone conversations during Cano's countenance incarceration and just recently that the United States Attorneys promise to reduce his sentence was inevitable. But that they(Bolger's & Lucenti) have ran into some minor technique problems with the United States Attorneys office regarding the necessary paper work, and to whom the responsibility fell on to file the motion for reduction on Mr. Cano's behalf. Please See Attached Sworn Affidavits From Desi Cano's Family Members Attached For Easy Reference.

Specifically, in the most recent telephone conversation which was recorded by Mr. Cano's family members Mr. Kevin Bolger's and Robert Lucenti[3] confirm the fact that their was and exist a sentence reduction promise made to Mr. Desi Cano by the United States Attorneys Office in exchange for his guilty plea which has not been fulfilled as of yet, as the following excerpts from the recent recorded conversations between Desi Cano's family members and attorney's Kevin Bolger clearly indicate:

Phone Conversation Between Mario Diaz And Kevin Bolger's On July 30, 2007

| | |
|---|---|
| Mario Diaz:<br>Brother In-Law<br>Of Desi Cano | ...You know also Desi he calls me...He told me that he sent you and Mr. Bolger's a letter. |
| BOLGER: | Yeah, tell him I got the letter. Tell him the guy that was working on the case quit. They are trying to find a new guy now. They haven't put a new guy on yet. You know what this is so frustrating, because every time we start getting somewhere the guy leaves or retires. The one guy retired. The other guy got another job. The other guy quit the office. Then you've got to start all over again. It's insane. Tell Desi I'm trying so hard; I'm really trying hard. These people they're just... they're... you know what the problem is? They aren't going through the problems, so they don't care that much... |
| DIAZ: | Right, but Desi told me[that] when he was here in Chicago at the MCC... |
| BOLGER: | Yeah. |
| DIAZ: | Do you remember? |
| BOLGER: | Yeah. |
| DIAZ: | He said that you told him that you might try to reduce his sentence from 210 to 120 months. |
| BOLGER: | Well, this is what we're trying to do. See, he's suppose to get credit for something he said and did, and they're not giving it to him. We filed the motion. The government filed the motions to reduce, but we never had it heard. So this is where we've got to go... |
| DIAZ: | I know you said you guys were working on his case, but at the same time... |
| BOLGER: | I was down there this morning trying to get someone to take it up. |
| DIAZ: | Right, and Desi he said please ask them if he can update him. Send him a letter. |
| BOLGER: | As soon as I figure out what this guy is doing I'll send him a letter. |

---

3. Mr. Lucenti on his recorded conversation with Leticia Esmeralda Cano, Desi Cano's daughter on August 6, 2007, admits to some kind of promise being made and that "there's been stuff going on for quite some time."

DIAZ:               You know that way he's going to feel much better.

BOLGER:             He wants to know that we're doing something. I don't blame him.

DIAZ:               Yeah, he just wants to know what's going on with his case.
                    He said it's almost ten years and I know, I remember that Bolger's
                    told me Lucenti that they were going to try to reduce his sentence
                    to ten years, and it's almost ten years already, you know.

BOLGER:             Yeah, I know...

BOLGER:             Well, here's the problem that we have, okay? We have to have the
                    government on our side. If we don't, the judge we're in front of
                    is crazy. That's how we wound up with the situation to begin with
                    cause this judge was a lunatic. If we had a good judge we could just
                    go right in front of the judge and say judge c'mon they promised they
                    were going to do this, they haven't done it, tell them to get off
                    their ass and do it. But this judge...

Phone Conversation Between Leticia Esmeralda Cano And Kevin Bolger On August 6, 2007.

Leticia Esmeralda Cano:  Hi Mr. Bolger's ...
Daughter Of Desi Cano

BOLGER:             These are the United States Attorneys, the guys that are in charge.
                    And these are the guys, you know I told you guys and I don't know
                    if you remember or not, but the motion that was filed to reduce.
                    It has to be filed by the United States Attorney and they have to
                    go in with a petition to reduce the sentence and every time it gets
                    to somebody else they start checking it out and the they leave before
                    they get the job done. And the new guy has got to start all over again.

LETICIA:            So a motion has never been filed.

BOLGER:             No, the Rule 35 motion was filed but the reasons for the decrease
                    for the sentence were never filed on top of it. And we're in front
                    of a real jerk judge, she's just an idiot. And we got to be very
                    careful how we do this or she's just going to create hell. So I'm
                    trying to get the supervisor that's the boss now to pick this thing
                    up and review it. Contact the other guys and contact the agents that
                    we can go into court to get a sentence reduction. So that's where
                    it's at. So every week I try to see if he's got something if he knows
                    something. His kind of new at the job so his got a lot of things on
                    his plate. You know, we're not the top priority unfortunately, and
                    we can't be nasty...

LETICIA:        So before you said the motion was filed, but there had...

BOLGER:         The motion so that they know they're going to have the reduction
                was filed. Once it's filed, it's held open.

LETICIA:        Okay.

BOLGER:         And it's open, but now they've got to come in and say "judge we
                filed this motion four years ago and now this is what we want to
                tell ya." See, so you know, and that's the part that works out for
                your dad.

BOLGER:         But here's the problem, see the original United States Attorney
                that was on the case said you know. "Listen here's what we're going
                to do. We'll do this plea and then I'll review all this stuff and
                we'll get him a reduction and we'll be set." And we had to because
                the judge we were in front of is crazy and if we didn't do it then
                he would had to go to trial and then he would of gotten you know 30
                years or something. That guy quit and became a minister and then I
                got it assigned to another guy, a buddy of mine that was a supervisor
                there, and he was working on it with this other kid. Then he quit and
                went into private practice and the kid that was working on it quit
                and went into private practice. So then I had to get it assigned to
                a new guy and I got it assigned to this guy and he quit and then a
                supervisor had it and said "don't worry I'll get it done." and then
                he retired.

LETICIA:        It's one thing after another.

BOLGER:         I've never had this happen in all the years I've been practicing
                law. It's been one thing after the other. So now the new guy is on
                the case and what I'm trying to do, actually, is contact my friend
                who's in private practice, the guy who originally had it, and tell
                him "you've got to call this guy up. Because you know him better than
                I do and tell him you've got to do something for this guy." So, you
                know. I'm hoping that he'll call me and we'll get this thing done.

LETICIA:        Well yeah I'm hoping too!

BOLGER:         So just tell everybody to keep praying and hopefully this will
                work out. Because I'm still very optimistic about it. It's just that
                I had to get everything aligned and set up so that we could do it.

A casual reading or audio hearing of these conversations which took place on August 6, 2007, indicate one or two things. One, that the United States Attorneys office made an arrangement and or promise to Mr. Desi Cano in exchange for his guilty plea which has not been fulfilled as of yet, or Two that defense counsel Kevin Bolger's and Robert Lucenti have been not only misleading Desi Cano from the start but also his family members into believing that a sentence reduction existed and was in the works since Desi Cano's conviction.

Regardless of the situation here this episode strikes at the public confidence in the fair administration of justice and in turn the integrity of our criminal justice system and seriously affects the fairness and public reputation of judicial proceedings. These acts were not only prejudicial to the administration of justice but also un-ethical in Bolger's and Lucent's part by intentionally misleading their criminal defendant Desi Cano and his family members all these years into believing that they [Bolger's and Lucenti] have been working for years on a sentence reduction which would reduce Desi Cano's sentence and set him free after ten years of incarceration.

The dishonest act here by either the United States Attorneys office or defense attorney Bolger's and Lucenti resulted in Desi Cano being deprived of his constitutional rights to file a timely direct appeal, 2255 petition, and a Writ Of Certiorari to the United States Supreme Court.

This case warrants an evidentiary hearing since Desi Cano has plainly alleged facts regarding his diligence that would entitle him to relief in the form of a timely petition since at a minimum the record here includes more than five sworn affidavits from Desi Cano's family members who are apparently willing to testify under oath that defense attorneys Kevin Bolger's and Robert Lucenti indeed promised Desi Cano some kind of promise or sentence reduction in exchange for his guilty plea. And that these same attorneys have been misleading them since Desi Cano's conviction that such promise would be fulfilled. But the most important and damaging evidence that Mr. Desi Cano possess to support his claim here that he has been mislead into believing that there was no need to file a timely direct appeal because his attorneys Bolger's and Lucenti were working on a fail proof sentence reduction is three authentic telephone conversations with defense attorney Bolger's and Lucenti maintaining their ten years promise and their involvement in conspiring into intentionally misleading Desi Cano and his family members for almost ten years, which has resulted in Desi Cano being deprived of his right to appeal or collaterally challenge his sentence.

"The District Court must take further steps to determine
the truth and significance of what is alleged. BLACKLEDGE
V. ALLISION, 431 U.S. [63] at 80-83, 97 S. Ct.[1621] at 1632-
34[52 L. Ed. 2d. 136(1977); Rules 5-8 Rules governing § 2255
proceedings. Nothing we have written should be taken as sug-
gesting that [appellants] claims are true. We simply point out
that this case cannot be dismissed without deciding whether they
are true or false.

HERNANDEZ-HERNANDEZ V. UNITED STATES, 904 F. 2d. 758, 763(quoting GIARDINO, 797 F.
2nd. at 32-33

Although district courts are not required to hold evidentiary hearings where the
petitioner's allegations are affirmatively contradicted by the record, or the claims
are patently frivolous, HOLMES 876 F. 2d. at 1553, no such circumstances are present
here in Mr. Desi Cano's case.

Desi Cano has plainly alleged facts regarding his diligence that would entitle him
to relief in the form of a timely petition. Mr. Cano's allegations are not affirm-
atively contradicted by the record. For example let's take Desi Cano's brother-in-laws
conversation with Kevin Bolger's which took place recently on July 30, 2007. Mr. Diaz
specifically and clearly ask's Mr. Bolger's whether he remembers the time Desi Cano
was being housed at the MCC in Chicago and he [Bolger's] promised him that he would
reduce his sentence from 210 months to 120 months. Mr. Bolger's did not hesitate in
replying to this question and simply responded "Well this is what we're trying to do.
See he's suppose to get credit for something he said and did, and they're not giving
it to him. We filed the motions. The government filed the motions to reduce, but we
never had it heard."

A review of Desi Cano's current docket sheet will quickly depose of Bolger's claim
here, since the docket sheet reveals that no such motion has ever been filed on Mr.
Cano's behalf.

Now if we take Desi Cano's daughter Leticia Cano's conversation with Kevin Bolger's
which took place on August 6, 2007. Mr. Bolger's specifically informs Leticia Cano
that the United States Attorneys office guaranteed and promised a sentence reduction
to Mr. Cano from the very beginning of his court proceedings in exchange for his
guilty plea. Specifically, Mr. Bolger's states "But here's the problem, see the
original United States Attorney that was on the case said you know. Listen here's what
we're going to do. We'll do this plea and then I'll review this stuff and we'll get
him a reduction and we'll be set."

These conversations[4] which took place recently between attorneys Bolger's and Lucenti with Desi Cano's family members cannot be disposed of so easily since their authentic conversations which recently took place and support Desi Cano's position here that he has been mislead from the date of his conviction by either the United States Attorneys Office or Kevin Bolger's and Robert Lucenti into believing that their was no need to file a direct appeal, because according to Bolger's and Lucenti the United States government was going to reduce his sentence to 120 months from the original 210 month sentence imposed on him, thereby Mr. Cano waiving his constitutional right to a direct appeal.

Desi Cano has plainly alleged facts regarding his diligence in filing this petition which should entitle him to relief in the form of this court finding this petition to be timely filed. Mr. Cano's allegations are not affirmatively contradicted by the record. Therefore, Mr. Desi Cano requests and moves the court for an evidentiary hearing to prove his diligence in filing this petition. ARON V. UNITED STATES , 291 F. 3d. 708, 712(explaining that the "due diligence inquiry is an individualized one that must take into account the habeas petitioner's situation. Or in the alternative Desi Cano requests that this court find that he exercised due diligence in filing this petition and permit his issues raised herein to be entertained and decided on it's merits rather than on the timeliness of this petition.

---

4 . Mr. Desi Cano will motion this court for leave to introduce these conversations into the court records as evidence in support of his 2255 motion pursuant to Federal Rules Of Evidence Rule 403 and Rule 901, or through an In Camera Review Session.

**GROUND TWO:**

DESI CANO WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE
OF COUNSEL WHEN HIS DEFENSE ATTORNEYS FAILED TO FILE A
TIMELY NOTICE OF APPEAL WHEN SPECIFICALLY INSTRUCTED

Desi Cano claims here that his defense attorneys Kevin Bolger's and Robert Lucenti
acted in a manner that is professionally unreasonable when they failed to file a
timely notice of appeal in his behalf after being specifically instructed to do so.
Therefore, Mr. Desi Cano believes he should be placed back in the position he would
have been minus his attorneys malfunction, which is to vacate his sentence and con-
viction and permit him to file a timely notice of appeal and thereafter to immediately
reinstate his conviction and sentence. JOHNSON V. UNITED STATES, 362 F. 3d. at 638.

Every Court of Appeals that has addressed the issue has held that a lawyer's failure
to appeal a judgment, in disregard of the defendant's request, is ineffective assi-
stance of counsel regardless of whether the appeal would have been successful or not.
See CASTELLANOS V. UNITED STATES, 26 F. 3d. 717, 719(7th Cir. 1994); UNITED STATES V.
PEAK, 992 F. 2d. 39, 42,(4th Cir. 1993); UNITED STATES V. HORODNER, 993 F. 2d. 191, 195,
(9th Cir. 1993); BONNEAU V. UNITED STATES, 961 F. 2d. 17, 23(1st. 1992); UNITED STATEES
V. DAVIS, 929 F. 2d. 554, 557(10th Cir. 1991); WILLIAMS V. LOCKHART, 849 F. 2d. 1134,
1137 n. 3(8th Cir. 1988); LUDWIG V. UNITED STATES, 162 F. 3d. 456(6th Cir. 1998).

In explaining why the defendant in CASTELLANOS were denied effective assistance of
counsel because their counsel failed to perfect an appeeal, Judge Easterbrook observed:

> Neither[of the defendants] has had legal representation when seeking
> relief... No one has looked at the record with an advocates eye.
> Although the district judges conscientiously tried to imagine what a
> a lawyer might have done, an advocate often finds things that an umpire
> misses-- especially when the umpire is asking whether the court of
> appeals was likely to reverse his own decision. Few district judges be-
> lieve that, they would have done things differently in the first place.

CASTELLANOS, 26 F. 3d. at 718(7th Cir. 1994)

"Request" is an important ingredient in this formula. A lawyer need not appeal
unless the client wants to pursue that avenue. UNITED STATES V. MOSLEY,
242 (7th Cir. 1992). The constitution does not require a lawyer to advise the client
of the right to appeal, the duty rests principally on the judge and even if both
judge and counsel forget to provide this advice most defendants know about the pos-
sibility of appeal and cannot complain if they are not furnished redundant information.
"Counsel will not be found ineffective per se for failure to appeal an appealable
judgment. OLIVER V. UNITED STATES, 961 F. 2d. 1339, 1342 (7th Cir. 1992). Only a
failure to appeal a judgment that the defendant desires to appeal is problematic.
If the defendant wants to take an imprudent appeal, the lawyer properly may try to
talk him out of it, but if the defendant nonetheless insists on appealing like in
Mr. Desi Cano's case, the lawyer must file the notice of appeal and represent his
client earnestly unless relieved by the court of appeals.


On February 23, 2000, the Supreme Court in ROE V. FLORES-ORTEGA, 145 L. Ed. 2d. 985,
provided the proper framework for evaluating a claim that counsel was constitutionally
ineffective for failing to file a notice of appeal as, among other matters, (1) counsel
had a constitutionally imposed duty to consult the criminal defendant only when there
was reason to think either that (a) a particular defendant would wanted to appeal, or
(b) a particular defendant reasonably demonstrated to counsel that he was interested
in appealing: and (2) the defendant was required to demonstrate that there was a rea-
sonable probability that, but for counsel's deficient failure to consult with him about
an appeal, the defendant would have timely appealed..

In Mr. Desi Cano's case he claims that he specifically instructed his defense counsel Robert Charles Lucenti to file a notice of appeal in order to challenge his sentence. But defense counsel Lucenti dropped the ball and failed to file the notice of appeal as Desi Cano instructed him.

Specifically, Mr. Cano contends that he wasn't fortunated enough to instruct his defense team which consisted of Kevin Bolger's and Robert Charles Lucenti of his desires to appeal immediately after sentencing, since the United States Marshals brisked him away from the courthouse too fast upon the sentencing court imposing sentence. But nonetheless, Mr. Cano asserts that the very next day after sentencing on February 20, 1999 he personally placed a telephone call from the Metropolitan Correctional Center ("MCC") in Chicago Illinois where he was being detained to Mr. Robert Charles Lucenti's business office and specifically instructed him to appeal his sentence.

Mr. Lucenti immediately attempted to talk Mr. Cano out of his desire to appeal stating "There is other more productive methods in having the sentence reduce, but an appeal is not one of them." Mr. Cano immediately began informing Mr. Lucenti how he was so disappointed on them referring to him and Kevin Bolger's his defense team on the results of his sentence. Mr. Lucenti replied that he would speak and confer with Kevin Bolger's of the situation at hand and his desire to appeal. Mr. Cano maintained his position and instructed Mr. Lucenti to file a timely notice of appeal on his behalf and challenge his sentence.

The court records here indicate that Desi Cano at no time waived his right to appeal his sentence or conviction. There was no written plea-agreement between Desi Cano and the United States Attorneys office. Mr. Cano's entrance into his guilty plea was without the benefit of a written plea-agreement. Nor is there any indication in Mr. Cano's change of plea hearing that Mr. Cano stipulated to waive his right to appeal his sentence or conviction.[5]

---

5. It should be noted for the record that the sentencing court failed to rehearse Rule 32(4)(j)(1)(b) of Federal Rules Of Criminal Procedures after sentencing to Desi Cano. Whether he wished to appeal.

Defense counsel's failure to file a notice of appeal here was not the product
of any strategic decision. Defense counsel Robert Lucenti forgetting or simply
ignoring Desi Cano's instructions to file a notice of appeal here after specifically
being instructed to is far from a reasonable strategy and clearly falls outside the
wide range of professionally competent assistance. KITCHEN V. UNITED STATES, 227 F.
3d. 1014, 1027(7th Cir. 2000)(quoting CASTELLANOS, 26 F. 3d. 717)

Regardless of defense counsel's Robert Lucenti reason(s) in failing to file a notice
of appeal in Desi Cano's behalf. The fact remains that Mr. Cano instructed Mr. Robert
Lucenti to file a notice of appeal and he simply failed to do so.

Based on this reasoning Desi Cano should be placed back in the position he would
have been in had his defense counsel Robert Lucenti been functioning as the Sixth
Amendment guarantees. JOHNSON V. UNITED STATES, 362 F. 3d. at 638. That position is
to vacate Desi Cano's sentence and conviction and immediately reinstate it, thus
permitting Mr. Cano the opportunity to file a timely notice of appeal if he still
desires to do so.

The Petitioner Desi Cano has submitted into evidence and fully incorporates his and
his family members sworn affidavits attached hereto in support of the issues raised
herein this petition, which should be taken as true and correct. Any affidavit sub-
mitted by any other party disputing and or contradicting the Petitioner's affidavits
would require an evidentiary hearing to resolve the disputing facts, which is hereby
necessary and requested by the Petitioner. HOLLEMAN V. DUCKWORTH, 155 F. 3d. at 911;
GALBRATH V. UNITED STATES, 313 F. 3d. at 1009.

GROUND THREE:

### DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING
### TO FURNISH, READ AND DISCUSS THE PRESENTENCE
### INVESTIGATION REPORT WITH PETITIONER

Desi Cano contents here that not only was his defense counsel ineffective for not furnishing him with a copy of his Presentence Investigation Report but also not reading it or discussing the contents of the Presentence Investigation Report with him. But also that the District Court violated his Due Process Rights by failing to inquire at sentencing whether Desi Cano was provided with a copy of his Presentence Investigation Report, whether he had an opportunity to read it and had discussed it with his attorney, and whether Desi Cano wished to challenge any facts contained in his Presentence Investigation Report.

Desi Cano's defense counsel's ineffectiveness and the District Court's failure to comply with Federal Rules Of Criminal Procedures Rule 32(c)(3)(A), not only denied Cano the right to challenge the accuracy of his Presentence Investigation Report, but also denied him the right to be sentenced on the basis of accurate information.

The Fifth Amendment forbids the federal government from depriving a person of his right to life, liberty or property without due process. The Supreme Court has defined due process as requiring as a general matter the opportunity to be heard at a meaningful time and in a meaningful manner. MATTHEWS V. ELDRIDGE, 424 US 319, 47 L. Ed. 2d. 18 (1976): ARMSTRONG V. MONZO, 380 US 545, 14 L. Ed. 2d. 62(1965).

Federal Rules Of Criminal Procedures Rule 32(c)(3)(A), requires a sentencing court to determine that the defendant and defendants counsel have had the opportunity to read and discuss the Presentence Investigation Report. The Seventh Circuit in UNITED STATES V. RONE, 743 F. 2d. 1169, 1174(7th Cir. 1984), held that the rule requires the judge at sentencing to ask the defendant three questions: 1) whether the defendant has had an opportunity to read the PSI; 2) whether the defendant and defense counsel have discussed it; and 3) whether the defendant wishes to challenge any facts contained in the Presentence Investigation Report. Also Please See UNITED STATES V. HUGHES, 213 F. 3d. 323(7th Cir. 2000)

In RONE, the defendant alleged that he was deprived of his chance to challenge the accuracy of the drug quantity figures contained in his presentence investigation report, because he never read his presentence investigation report, or had discussed it with his defense counsel. The judge after neglecting to ask defendant whether he had objections to the presentence investigation, relied in part on the drug quantity figures recommended therein in imposing Rone's sentence.

In Desi Cano's case, the sentencing transcripts reflect that the district court did not pose Cano the questions mandated by this circuit in RONE. At Desi Cano's sentencing the following dialogue took place:

THE COURT:    Well, have you had a chance to go through the presentence report carefully, Mr. Bolger's with your client?

MR. BOLGER'S: Yes, your Honor.

THE COURT:    Any additions or corrections to the presentence report?

MR. BOLGER'S: Judge, we take some exceptions to it, but we have no addition to the presentence report.

THE COURT:    In the narrative, the non-guideline calculations.

MR. BOLGER'S: That's correct, Judge. We basically are in agreement with that.

THE COURT:    Any corrections to the narratives?

MR. MAY:      No, your Honor.

THE COURT:    I didn't receive any objections from you. Is there an objection to the guideline calculations?

MR. BOLGER'S: Judge, there weren't. And the reason there weren't is because up until actually yesterday, late yesterday evening, I though Mr, May and I were going to be in agreement with respect to the calculations. There's actually only one part that we're in disagreement with, and that is the role in the offense.


Sentencing Transcripts Pages 2 & 3

There is no doubt that the omission of the Seventh Circuits ritual here by the able trial judge was inadvertent and doubtless a lapse from her usual practice. At all events the statement does not meet Rule 32's mandate that the court "verify" in one way or another, that Desi Cano had read and discussed the presentence investigation report with his attorney Mr. Kevin Bolger's.

Nonetheless, in RODRIGUEZ-LUNA, the Seventh Circuit held that "in the absence of any allegation that [the defendant] did not review the presentence investigation report and any identification of the facts that [he/she] would have disputed if he/she would have be given the opportunity no remand or resentence is required. Id. 937 F. 2d. 1208, 1213(7th Cir. 1991).

In RODRIGUEZ-LUNA, remand was unnecessary because of two factors. Id. at 1213. First, the defendant failed to allege that he had not read or discussed the report, Second, the only meaningful dispute, at sentencing involved the proper quantity of cocaine to consider, and the defendants attorney filed an objection to the presentence report's factual finding on that matter and that there were no factual inaccuracies that the defendant could have challenged had he been given an opportunity to read or discuss the report.

In the present case the sentencing transcripts here reflect that Desi Cano's defense team which consisted of Kevin Bolger's and Robert Lucenti did not file any written objections to the probation officer's court recommendation. But at the eleventh hour without any proper investigation or research on the issue Kevin Bolger's spontaneously made an oral objection to the probation officer's recommendation in Desi Cano's presentence investigation report on the two-level enhancement recommendation for Cano's role in the offense, specifically for supposedly "supervising and directing the movements of Juan Manual Perez and Gillermo Carrera." Please See PSI At ¶¶ 194-206.

Desi Cano denies any involvement with Kevin Bolger's oral objections and contends that he was unware of any enhancement for the role in the offense, since he was never furnished with a copy of his Presentence Investigation Report("PSI") prior to sentencing, nor did defense counsel Bolger's or Lucenti ever read or discussed the Presentence Investigation Report with Mr. Cano prior to his sentencing, otherwise Mr. Cano would have insisted on objecting to the following Presentence Investigation Report's inaccuracies.

## A. MANAGER/SUPERVISOR OF CRIMINAL ACTIVITY

Section 3B1.1 of the Sentencing Guidelines calls for an enhancement in the defendant's base offense level when the defendant has played an aggravating role in the offense. Subsection (a) specifies a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive"; while subsection(b) calls for a three-level increase "[i]f the defendant was a manager or supervisor(but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."

In contrast to those two subsection which envision the involvement of five or more participants or "otherwise extensive" criminal activity, subsection (c)-which calls for a two-level increase "if the defendant was an organizer, leader, manager or supervisor in any activity other than described in (a)(b)" may apply so long as the criminal activity involves more than one participant and the defendant played a coordinating or organizing role. See UNITED STATES V. JOHNSON, 54 F. 3d. 1295, 1309(7th Cir. 1995); UNITED STATES V. MICHALEK, 54 F. 3d. 325, 333(7th Cir. 1995); U.S.S.G. § 3B1.1 comment (n.2)(1994)

To determine a defendants relative role  a sentencing judge must consider the following factors: (1) exercise of decision-making authority; (2) nature of participation in the commission of the offense; (3) recruitment of accomplices; (4) claimed right to a larger share of the fruits of the crime; (5) degree of participation in planning or organizing the offense; (6) nature and scope of the illegal activity; and (7) degree of control and authority exercised over others. See U.S.S.G. § 3B1.1 comment (n.4): Also See UNITED STATES V. SCHUH, 289 F. 3d. 968 (7th Cir. 2002)(quoting UNITED STATES V. NOBLE, 246 F. 3d. 946(7th Cir. 2001).

-17-

Desi cano's argument here is that there was insufficient evidence to establish an enhancement on his base offense level by two levels under U.S.S.G. § 3B1.1(a) for a manager/supervisor role in the cocaine distribution conspiracy. Mr. Cano contends that he had only a buyer/seller relationship with his coconspirators in cocaine transactions for which a section § 3B1.1(a) enhancement is inapplicable. Moreover, Mr. Cano does not believe that the given reason(s) are or were adequate to support a § 3B1.1 increase.

In finding that Desi Cano was a manager/supervisor of the criminal activity the Probation officer recommended the § 3B1.1(a) two-level enhancement, since according to him "Mr. Cano had decision making authority relative to the delivery and transfer of cocaine and cash money." Specifically that "Mr. Cano supervised and directed the movement of Juan Manual Perez and Guillermo Carrera. Please See Desi Cano's PSR ¶ 194-206. The district court justified the § 3B1.1(a) enhancement at the time of sentencing stating:

> "Well, I have read the summary of the intercepted telephone conversations which are, in fact in the presentence report, as well as having reviewed the report itself, and it certainly appears that Mr. Cano played a sentry role in narcotics distribution in that while he isn't the kingpin of the organization, he certainly had other people assisting him and he certainly gave instructions to other people in a major distribution nework. So I think that the probation officer's use of the two-level enhancement for role in the offense was carefully considered and supported by the preponderance of the evidence.

Desi Cano did distribute cocaine to others, cocaine destined for retail sale. But by itself, being a distributor, even a large distributor like Mr. Cano is not enough to support a § 3B1.1 offense level increase. UNITED STATES V. BROWN, 944 F. 2d. at 1381. Rather, if he was a distributor, the defendant must also have been an organizer, leader, manager or supervisor of those to whom he distributed. If the record does not show that Mr. Cano had the status, if the defendant maintained no real influence or authority over the purchasers, a § 3B1.1 adjustment is inappropriate. BROWN, F. 2d. at 1381. The record here does not show that Desi Cano had any influence or authority over anybody to whom he distributed cocaine too. Let alone Juan Manual Perez and Guillermo Carrera as was the two-level enhancement based on here.

The government claimed that Juan Manual Perez was constantly working and taking orders from Desi Cano. Sentencing Transcripts Page 10, PSR ¶ 194-206. Which if true it would certainly earn Mr. Cano a managerial role. But the court records here simply fail to support the governments allegations.

According to the government's own Evidentiary Proffer filed in the district court on November 2, 1998, the government specifically contends that on May 26, 1998 defendant Cano and two of his associates Jorge O'Conner and Juan Manual Perez were arrested as they were in the process of unloading cocaine into a garage behind 5058 W. 38th Place in Cicero Illinois. Page 9 Of The Governments Evidentiary Proffer. The government here uses the word associates, not workers or employees. Webster's Third New International Dictionary defines associates as Partners, colleague, or ally. Moreover, the writer of Desi Cano's Presentence Report "PSR" documents that on May 26, 1998, Mr. Cano drove the Chevy Lumima with Juan Manual Perez in the passenger side with the 100 kilogram cocaine cargo into the garage of the residence of 5058 West 38th Place in Cicero Illinois (PSR ¶ 76-96). The governments evidentiary proffer supports the PSR that Mr. Desi Cano was driving the Chevy Lumima cargo of cocaine. Since this proffer documents that "Cano backed the Lumina into the garage and closed the door." Page 32 Of The Governments Evidentiary Proffer. Also Please See Plea-Transcripts U.S. Attornys Factual Allegations At Page 32.

Additionally, the PSR ¶ 141-145 documents that according to agent Baumgartner Mr. Perez accompanied Cano when Cano dropped off a $505,000.00 money delivery on May 22, 1998. In this same paragraph the writer of the PSR also documents that Mr. Perez may have brought O'Conner into the offense, as they knew each other. And that there is no clear evidence however that Mr. Perez participated in other cocaine transactions besides the May 26, 1998 incident involving the 100 kilograms.[6]

---

6 . It should also be noted for the record that Desi Cano's PSR at ¶ 137-138 identifies Juan Manual Perez as Desi Cano's customer. Also in the Governments Evidentiary Proffer Motion it is established by the government that Juan Manual Perez was Cano's customer since according to the government there was evidence in recorded conversations between Cano and Perez that there were negotiations of kilograms of cocaine between these individuals. Please See Governments Evidentiary Proffer Motion Pages 26-27. Moreover, at Desi Cano's sentencing phase the U.S. Attorneys himself states that "Camote" is Desi Cano's customer. Sentencing Transcripts Page 11. An audio test of Juan Manual Perez and "Camotes" voice will reveal that there one of the same. Therefore, there sufficient evidence to support Desi Cano's claim that Juan Manual Perez was not working for Mr. Cano nor taking orders from him.
Also Please See Mr. Cano's Plea-Transcripts Page 32, wherein the U.S. Attorney is actually dictating the factual allegations and speaks regarding Mr. Cano's conspiracy and his customers

These legal entries into authentic court records along with the fact that the government themselves referred to Juan Manual Perez as an "Associate" and "Customer" of Desi Cano cannot support the governments claim that Juan Manual Perez was constantly working and taking orders from Mr. Cano. Also the fact that Juan Manual Perez was riding with Mr. Cano on the passenger side when Cano backed the Chevy Lumima which contained 100 kilograms of cocaine into the garge behind 5058 West 38th Place in Cicero ILlinois and the fact that Juan Manual Perez accompanied Mr. Cano to drop off a $505.000.00 money delivery to the big guys only proves one thing, which is that Juan Manual Perez and Desi Cano were essentially equal partners in crime.

In another words the only thing Desi Cano had going with Juan Manual Perez was a Buyer/ Seller relationship each with there own separate area of distribution. Otherwise Mr. Cano would have simply used his compatriot(Perez) to insulate himself from some of the perils of dealing by simply directing Juan Manual Perez to engage in the necessary, but risky behavior of transporting, storing drugs, collecting and deliverying money, instead of Desi Cano simply doing it himself and accompanied with Juan Manual Perez as the records indicate. The record here reflects that Desi Cano did not control or give orders to Juan Manual Perez but rather they were associates in a Buyer/Seller relationship in the drug trade. A two-level increase under U.S.S.G. 3B1.1(a) here is unsupported on Desi Cano having any influence or authority on Juan Manual Perez.[7]

---

7. Being a drug supplier does not automatically make the defendant a "supervisor" for purpose of sentence enhancement. UNITED STATES V. JIMINEZ, 224 F. 3d. 1243.

To receive any § 3B1.1 increase, a defendant "must have been the organizer, leader, manager or supervisor of one or more other participants." U.S.S.G. § 3B1.1. Comment (n.2) Also See UNITED STATES V. SCHUH, 289 F. 3d. 968, 972(7th Cir. 2002)(quoting UNITED STATES V. FONES, 51 F. 3d. 663, 668(7th Cir. 1995). Thus, at a minimum, a defendant must have had some real and direct influence, aimed at furthering the criminal activity, upon one other identified participant. "Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership UNITED STATES V. BROWN, 944 F. 2d. at 1385.

Accordingly, in order for Mr. Cano to have been assessed an increase under § 3B1.1 he must have been the manager or supervisor of one or more other participants in the criminal activity. The probation officer and the U.S. Attorney claimed that Desi Cano supervised and directed the movements of Juan Manual Perez and Gillermo Carrera. See Presentence Investigation Report ("PSR") ¶ 194-205 And Sentencing Transcripts Page 10. Desi Cano has demonstrated through authentic court documents that he was not the leader or supervisor of Juan Manual Perez, nor had he any control or in-fluence over him but in essence Desi Cano was a cocaine distributor and Juan Manual Perez was a buyer of cocaine which he purchased from Desi Cano, which in turn is a buyer/seller relationship. Desi Cano here will also demonstrate that a § 3B1.1 enhancement was not appropriate based on Gillermo Carrera as the government and the probation officer recommended.

The writer of Desi Cano's presentence investigation report documents and label's Guillermo Carrers as Cano's worker not Cano customer. See PSR ¶ 138-139. But in reality the only incriminating evidence that the United States government possess regarding Guillermo Carrera interacting in any illegal drug activity is the seizure of four kilograms of cocaine on May 6, 1998, where according to the U.S. government Desi Cano orchestrated the 4-kilo delivery to Eduardo Ruiz. Please See Governments Evidentiary Proffer Filed Dated On November 12, 1998, Pages 22 Thru 24. Otherwsie there is absolutely no indication anywhere in the record that Desi Cano directed Guillermo Carrera to pick-up, store, move cocaine or to delivery cash money in pay-ment for cocaine as the probation officer recommends in Desi Cano's Presentence Inves-tigation Report.

At sentencing the U.S. government claim that Mr. Carrera the same person that assisted Mr. Cano in the delivery of the 4-kilos of cocaine to Eduardo Ruiz on May 6 1998 also assisted Mr. Cano with the 100 kilo deal on May 26, 1998. But a casual review of the Governments Evidentiary Proffer filed in the district court on November 2, 1998 and the Presentence Investigation Report will clearly discredit the governments claim here. The person who was identified by uncover agents who met with Desi Cano prior to their arrest on the 100-kilo deal on May 26, 1998 was Jose Carrera not Guillermo Carrera. Please See PSR ¶ 80-82 And Governments Evidentiary Proffer Page 31.

Therefore there is no evidence in the court records to establish Desi Cano supervised and directed Guillermo Carrera. There is no evidence of Guillermo Carrera participating in any drug related activity on the orders and supervision of Desi Cano to maybe the exception of the 4-kilo deal on May 6, 1998, which if Guillermo Carrera did participate in which he denies is an isolated incident not enough to support a § 3B1.1(b) adjustment. UNITED STATES V. BROWN, 944 F. 3d. at 1380-81.

Desi Cano has located Guillermo Carrera who is willing to testify under oath that (1) he is the individual who was suspected by the Drug Enforcement Agency ("DEA") to have been involved in the illegal drug activities with Desi Cano, (2) that he is not the individual who participated on the 4-kilo or 100-kilo cocaine transaction on May 6, and May 26 with Desi Cano as the government claim and that (3) he has been interviewed and interrogated by the DEA and has been clear of any charges or suspicion of his involvement in any illegal drug activities.

"Convicted defendants, including those who plead guilty, have a due process right
to a fair sentencing procedure which includes the right to be sentenced on the basis
of accurate information." UNITED STATES V. RONE, 743 F. 2d. 1169, 1171(7th Cir. 1984)
(citing UNITED STATES V. TUCKER, 404 U.S. 443, 92 S. Ct. 589) In order to establish a
violation of this right, a defendant must show (1) that the information before the
sentencing court was false and (2) that the court relied on the false information in
passing sentence. PEARSON V. UNITED STATES, 265 F. Supp. 2d. 973(7th Cir. 2003).
"A sentencing court demonstrate actual reliance on misinformation when the court gives
'explicit attention' to it, found it's sentence 'at least in part' on it, or gives
'specific consideration' to the information before imposing sentence. UNITED STATES V.
SALINAS, 365 F. 3d. 582, 586(7th Cir. 2004).

In Desi Cano's case the sentencing court and the probation officer used inaccurate
and false information to assess him a two level increase for being a manager and
supervisor of Juan Manual Perez and Guillermo Carrera, which ultimately resulted in
Mr. Cano's sentence being increase. The Probation Officer, United States Attorney and
the District Court all held that Desi Cano supervised and directed the movements of
Juan Manual Perez and Guillermo Carrera. Desi Cano disagrees and asserts that had the
district court not relied on this improper and erroneous information his sentence would
have been different.

Let's recap the evidence which points to the court using inaccurate and false infor-
mation to have sentenced Desi Cano to a two-level increase under U.S.S.S. 3B1.1.
We'll start first with Juan Manual Perez. The Presentence Investigation Report "PSR"
clearly documents that Juan Manual Perez never participated in any transactions besides
the May 26, 1998, 100-kilo deal. Please See PSR ¶ 141-145. Also the governments own
version in their "Evidentiary Proffer" filed by the government on November 2, 1998 clearly
reflects that the government refers to Juan Manual Perez numerous times as Mr. Cano's
associate and also enters into the record that "Desi Cano was driving the Chevy Lumima
accompanied by Juan Manual Perez in the passenger side when the 100-kilogram cocaine
deal went down on May 26, 1998. Please See Governments Evidentiary Proffer At Page 32.

Therefore, if Juan Manual Perez only participated in the 100-kilogram cocaine deal on May 26, 1998 as the probation officer claims on their entries on Desi Cano's PSR at paragraph 141 thru 145, and if Desi Cano was driving the Chevy Lumina on May 26, 1998 accompanied with Juan Manual Perez on the passenger side as the government claims. Than the proper question here should be "when was Juan Manual Perez constantly working and taking orders from Desi Cano? As the district court determined upon sentencing Mr. Desi Cano for being a supervisor and manager pursuant to U.S.S.G. 3B1.1. I'm sure that a manager or supervisor wouldn't be driving 100 kilograms of cocaine with his workers. But rather would be sitting at home and directing his workers in this case Juan Manual Perez to drive the 100-kilograms of cocaine to its destiny.

Secondly, the sentencing court and the probation officer also relied on Guillermo Carrera to attribute Desi Cano an increase on his sentence under U.S.S.G. 3B1.1. Specifically, the United States Attorney at Desi Cano's sentencing phase told the sentencing judge that a two-level increase was warranted, based on Mr. Cano giving orders and directions to Guillermo Carrera based on the May 6 and May 26 drug deliveries. Please See Sentencing Transcripts Page 10.

But a review of the governments Evidentiary Proffer filed in the district court on November 2, 1998. and the PSR will clearly prove that this is inaccurate information. Since the individual who was identified by undercover agents who met with Desi Cano prior to his arrest on the 100-kilo deal on May 26, 1998 was <u>Jose Carrera</u> and not <u>Guillermo Carrera</u> as the United States Attorney and the sentencing court determined on Desi Cano's sentencing day. Please See Sentencing Transcripts Page 10 And PSR ¶ 80-82 And the Governments Evidentiary Proffer Page 31.

Desi Cano's sentence must be set-aside since Mr. Desi Cano has demonstrated that the Probation Officer, United States Attorney and the Sentencing Court relied on inaccurate and false information before imposing sentence. <u>UNITED STATES V. RONE,</u> 743 F. 2d. 1169, 1171 (1984)(quoting <u>UNITED STATES V. TUCKER,</u> 404 U.S. 443). Or at the very least Mr. Desi Cano has placed a shadow on the sentencing courts sentence based on the 3B1.1. enhancement.

**B. LIFE SENTENCE ON SUPERVISED RELEASE**

8.

On October 7, 1998 Desi Cano entered a plea of guilty to Counts One and Four of a five count indictment. Count One charged Desi Cano with conspiracy to possess with intent to distribute cocaine. The probation officer on his presentence invest-igation report("PSR") held Desi Cano accountable for conspiracy to possess over 150 kilograms of cocaine and recommended Mr. Cano's offense level to be 38 and Criminal History Category I.

The penalties for violating 21 U.S.C. § 846 are outlined in 21 U.S.C. § 841. Because Desi Cano was held responsible for over 150 kilograms of cocaine his penalties are dictated at 21 U.S.C. § 841(b)(1)(A) which states in relevant part;

    ... In the case of a violation of subsection(a) of this section involving

    ...(ii) 5 kilograms or more of a mixture or substance containing a detectable amount of (I) coca leaves, except coca leaves and extract of coca leaves from which cocaine ecgonine and derivatives of ecgonine or their salt have been removed; (II) cocaine, it's salt, optical and geometrie isomers and salts of isomers...

Such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more then life... Notwithstandings section 3583 of Title 18 any sentence under this subparagraph shall, in the absence of such a prior conviction impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction impose a term of supervised release of at least 10 years...

21 U.S.C. 841(b)(1)(A)

Therefore, accordingly, the maximum statutory term of supervised release applicable to Desi Cano here is five years, since Mr. Cano is a first time offender. The Pro-bation Officer recommended a "five to life" sentence of supervised release which is prohibited by the statute. Please See PSR at Page 17.

---

8. Count Four here is not relevant in this issue raised herein, but nevertheless Count Four was for using a telephone to facilitate a narcotic offense.

At Desi Cano's change of plea hearing the district court inform Mr. Cano that he was
facing a "Term of supervised release up to life." Please See Change Of Plea Hearing
At Page 27. But nevertheless, the supervised release terms authorized by 21 U.S.C.
§ 841(b)(1)(A) thrumps. UNITED STATES V. BARRAGAN, 263 F. 3d. 919, 925. But this does
not indicate that the sentencing court cannot depart upward and sentence Desi Cano to
a higher sentence of supervised release than what the statute mandates. But if the court
decides to sentence Desi Cano to more than "five years" supervised release the sen-
tencing court must precede by notice informing Desi Cano of their intentions to depart
upward on his supervise release, accompanied by at least a brief statement of the
reason(s) both for the departure and for the extent of the departure. BURNS V. UNITED
STATEES, 111 S. Ct. 2182, 2184-85; UNITEED STATES V. CONTRACTOR, 926 F. 3d. 128.

## C.  DRUG AMOUNTS

The probation officer on their Presentence Report recommended that Desi Cano should
be accountable for conspiring to possess with intent to deliver over 150 kilograms
of cocaine, based on the governments version, the taped-recorded telephone conver-
sations and the Quintanilla Organization Drug ledger which was seized on May 26, 1998
when Jesse Quintanilla was arrested.

Desi Cano contends that he should only be accountable for 104 kilograms of cocaine.
Specifically, the May 26, 1998 seizure of the 100 kilograms of cocaine and the seizure
of the four kilograms of cocaine from Eduardo Ruiz on May 6, 1998. Desi Cano denies
being "Fino" the individual who Jesse Quintanilla's "Ledger" points to have received
approximately 400 kilograms of cocaine. As for the recorded telephone conversations
Mr. Cano does not deny the May 26, 1998 pick-up, but does deny the May 4, and 7 1998
drug pick-ups. See PSR 109-113.

Moreover, it should be noted for the record that at Mr. Cano's change of plea hearing
on November 12, 1998, Mr. Cano specifically disagreed with the U.S. Attorneys factual
allegations and contested any other drug amounts for the exceaption of the 100-kilogram
transaction. Please See Change Of Plea-Transcripts Page 32. Therefore, Desi Cano objects
to being placed on offense level 38 instead of 36. Mr. Cano should only be accountable
for 104 kilograms of cocaine not 400. Due process requires that defendant be sentenced
on basis of accurate information. UNITED STATES V. ESCHMAN, 227 F. 3d. 886(7th Cir. 2000).

**CONCLUSION:**

The Honorable Circuit Judge Easterbrook in TALBOTT V. INDIANA, 226 F. 3d. 866, 869 (7th Cir. 2000) held in APPRENDI'S, 120 S. Ct. 2348, premier that federal law allows only one round of collateral review as of right. Id. at 869. But in Desi Cano's case he was forced to bypass not only his collateral review rights, but also his direct appeal rights due to his two criminal attorneys unprofessional standard of conduct, wherein they conspired among each other to mislead Mr. Cano and his family members for almost a decade into believing that there was no need to either appeal or collaterally challenge his sentence, since according to the attorneys premise, they had constantly been working on a sentence reduction for Mr. Cano since the initial filing of the criminal complaint against him.[9.]

This kind of conduct by two professional defense attorneys that have been practicing law for over 50 years between them should not be easily over-looked, since the purpose to have this petition heard is to bring to light what has occurred and to deter a repetition. A refusal to consider these serious accusations and properly investigate them with appropriate methods such as an evidentiary hearing would not only be a fundamental miscarriage of justice but it will also strike at the public confidence in the fair administration of justice and in turn seriously effect the fairness and public reputation of judicial proceedings. UNITED STATES V. SANTOS, 342 F. Supp. 2d. 781, 786-787(7th Cir.).

Based on this reasoning Mr. Desi Cano should be given the proper opportunity to be heard and support his claims raised herein, in the form of this court ordering an evidentiary hearing which in turn will also give the defense attorneys in question here the opportunity to defend themselves on Desi Cano's serious accusations. Or in the alternative Desi Cano requests that this court find that he exercised due diligence in filing his instant 2255 petition and permit his issues raised herein to be entertained and adjudicated on its merits rather than on the timeliness of the petition.

---

9. An attorneys blunder that results in a waiver of a right will not be a bar to a criminal defendants ability to raise the issue and have it heard. WAINWRIGHT V. SYKES, 433 U.S. 72

WHEREFORE, Desi Cano prays that this Honorable Court grant him the relief requested in this petition and any other relief this court might deem appropriate and just.

Respectfully Submitted

Desi Cano - Pro-Se
Reg#10121-424-Dorm-208
Duluth Federal Prison Camp
P.O. Box 1000
Duluth MN 55814

Executed On This 4th Day Of December 2007

## CERTIFICATE OF SERVICE

I, Desi Cano hereby certify under the penalty of perjury that on the last date given below, I deposited a true and correct copy of my Application Motion Pursuant To 28 U.S.C. § 2255, along with it's Memorandum Brief In Support Of The Application Motion, and it's attached Appendix and Motion To Introduce Telephone Conversations in the Duluth Federal Prison Camps Legal Mail system with first class postage affixed to insure it's proper delivery to;

Clerk Of The Courts
U.S. District Court For The
Northern District Of Illinois
219 South Dearborn Street
Chicago Illinois 60604

(3-Copies)

U.S. Attorneys Office
U.S. District Court For The
Northern District Of Illinois
219 South Dearborn Street
Chicago Illinois 60604

(1-Copy)

Executed On This 4th Day Of December 2007

Desi Cano

APPENDIX

EXHIBIT A

"AFFIDAVITS"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DESI CANO,

      Petitioner,

                    District Court Docket No.# 98CR-712-1

-v-

UNITED STATES OF AMERICA,         **AFFIDAVIT OF DESI CANO**

      Respondent,

· · · · · · · · ·

I, Desi Cano Being Duly Sworn Deposes And Swears Under Oath And Under The Penalty Of Perjury That The Following Statements Are True And Accurate To The Best Of My Knowledge:

1. That, I am the petitioner in this action and submit this affidavit in support of my motion pursuant to 28 U.S.C. § 2255.

2. That, Kevin Bolgers' and Robert Charles Lucenti were retained to defend me on my criminal charges on the above referenced case number.

3. That, criminal attorneys Kevin Bolger's and Robert Charles Lucenti informed me prior into entering my guilty plea and being sentence that the U.S. Attorneys office had conveyed to me a tangible proposition in exchange for my guilty plea. This proposition according to my criminal attorneys consisted of me entering into a guilty plea without the benefit of a written plea-agreement and timely providing the U.S. Attorneys Office with a proffer session, which in return the U.S. Attorneys Office would promise me a sentence reduction in the future which would guarantee me a sentence of no more than 10 years incarceration.

4. That, along with the U.S. Attorneys proposition I was not to reveal or discuss the U.S. Attorneys agreement with the courts.

5. That, upon my incarceration I diligently kept in constant contact with my criminal attorneys Bolger's and Lucenti through letters and telephone calls to their offices inquirying of the sentence reduction which I was promised prior to me entering into my guilty plea and being sentence.

6. That, even though I spoke personally with my criminal attorneys Boleger's and Lucenti from in prison through telephonic conversations and U.S. Mail regarding the U.S. Attorneys sentence reduction agreement, Bolger's and Lucenti never legally corresponded with me through letters.

7. That, criminal attorneys Bolger's and Lucenti assured and guaranteed me numerous times over our phone conversations that the initial U.S. Attorneys promise and agreement to reduce my sentence was inevitable.

8. That, the very next day after sentencing on February 20, 1999, I placed a telephone call from the Metropolitan Correction Center("MCC") in Chicago Illinois to Robert Charles Lucenti's law office to inform him how disappointed I was with them and the sentence I had received, contrary to what I was promised.

9. That, in this phone conversation of February 20, 1999, I also instructed Mr. Robert Charles Lucenti to file a direct appeal to challenge my sentence. Mr. Lucenti's reply was that "there is other more productive methods in having the sentence reduce, but an appeal is not one of them." And that he would confer with Kevin Bolger's of the situation and my desire to appeal.

10. That, my defense attorneys Kevin Bolger's and Robert Charles Lucenti never furnished me with a copy of my presentence investigation report, nor did they read it or discuss it with me. Nor did I have an opportunity to read it until recently while incarcerated.

11. That, I was mislead by my defense attorneys Bolger's and Lucenti into believing that I would be receiving a sentence reduction since the beginning of my criminal case which in return I losted the opportunity to challenge my sentence on direct appeal, and through a post-conviction remedy.

12. That, I will testify to these statements as I remember them and to the best of my ability and knowledge if a hearing is held necessary.

13. I understand that a false statement in this affidavit will subject me to the penalties of perjury. I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621, that the foregoing information contained herein this affidavit is true and correct.


FURTHER THE AFFIANT SAYETH NOT


*11-8-2007*

Date

*Desi Cano*

Desi Cano- Pro-Se
Reg#10121-424-Dorm-208
Duluth Federal Prison Camp
P.O. Box 1000
Duluth MN 55814

STATE OF ILLINOIS    )
                   )
COUNTY OF_____  )   **AFFIDAVIT OF LETICIA ESMERALDA CANO**
                   )

I, Leticia Esmeralda Cano Being Duly Sworn Deposes And Swears Under Oath And Under The Penalty Of Pejury That The Following Statements Are True And Accurate To The Best Of My Knowledge:

1. That, I am Desi Cano's daughter.

2. That, On August 6, 2007, I had two separate telephonic conversations with my father's criminal attorneys which go by the names of Kevin Bolger's and Charles Robert Lucenti.

3. That, on this August 6, 2007 telephone conversation with criminal attorney Kevin Bolger's he specifically informed me that from the very start of my father's criminal case, there was a promise made in part from the United States Attorneys office in exchange for my father's guilty plea. And that he (Kevin Bolger's) had previously filed a Rule 35 motion on my father's behalf, which would warrant my father a sentence reduction, which in turn would cover the United States Attorneys initial promise to my father Desi Cano.

4. That, criminal attorney Kevin Bolger's went as far as telling me on this August 6, 2007 phone conversation, that he has been working on my father's (Desi Cano) sentence reduction for some time now, and that the sentence reduction was inevitable, but that at the current time he(Kevin Bolger's) was simply having technical problems with the United States Attorneys office in the manner of executing the proper legal documents for the sentencing reduction but that he was "still very optimistic about the sentence reduction."

5. That, on the telephone conversation with criminal attorney Robert Charles Lucenti on August 6, 2007, Mr. Lucenti informed me that him and Kevin Bolger's have been working on my father's (Desi Cano) case for sometime and that if I needed any information regarding the status of my father's case, Kevin Bolger's was the designated person to speak with since "Kevin Bolger's is the one that's talked to the United States Attorney most recently about your dad's case" and if "[y]ou directly talk to Kevin Bolger's then you'll get it a little cleaner, that way I'm not interpreting anything that Kevin says."

6. That, I will testify to these statements as I remember them and to the best of my ability and knowledge if a hearing is necessary.

7. I understand that a false statement in this affidavit will subject me to the penalties of perjury. I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621, that the foregoing information contained herein this affidavit is true and correct.

FURTHER THE AFFIANT SAYETH NOT

_11 | 1 | 2007_

**Date**

_Leticia Esmeralda Cano_

**Affiant – Leticia Esmeralda Cano**
**249 Cara Ln.**
**Wood Dale Illinois 60191**

Subscribed And Sworn Before Me This ___ 5th Day Of November 2007

_Katherine_

**Notary Public**

_Leticia Esmeralda Cano._

Leticia Esmeralda Cano

"OFFICIAL SEAL"
Katherine S. Torres
Notary Public, State of Illinois
My Commission Expires Feb. 13, 2009

My Commission Expires ___2/13/09___

**Page 2 Of 2**

```
STATE OF ILLINOIS    )
COUNTY OF _____  )    AFFIDAVIT OF MARIO DIAZ
                     )
```

I, Mario Diaz  Being Duly Sworn Deposes And Swears Under Oath And Under The
Penalty Of Perjury That The Following Statements Are True And Accurate To The
Best Of My Knowledge:

1. That, I am Desi Cano's brother-in-law in the manner of Desi Cano's wife Leticia
   Cano being my wifes sister.

2. That, during Desi Cano's incarceration from approximately the year 2000, I fre-
   quently accompanied Desi Cano's wife Leticia Cano to Kevin Bolger's and Robert
   Lucenti's law office inquirying the status of Desi Cano's criminal case. Defense
   attorneys Bolger's and Lucenti always maintained that they were working very hard
   to get Desi Cano's sentence reduced. On my many visits to Bolger's and Lucenti's
   law offices I was very concern on Bolger's and Lucenti's slow progress and asked
   them whether their slow progress was based on their need for money to speed the
   process up, which their reply was always that they didn't need any money but what
   they actually needed was time.

3. That, on July 30, 2007 I had a telephonic conversation with Desi Cano's criminal
   attorney Kevin Bolger's regarding their continue assurance of a sentence reduction
   for Desi Cano.

4. That, on this July 30, 2007 telephonic conversation with Kevin Bolger's, he
   specifically informed me that not only was he still working on Desi Cano's case
   to reduce his sentence, but that he also remembers when Desi Cano was promised a
   ten year sentence.

5. That, criminal attorney Kevin Bolger's on this July 30, 2007 telephonic conversation
   informed me that Desi Cano's sentence reduction was inevitable, but that at the
   current time he(Kevin Bolger's) was simply having technical problems with the U.S.
   Attorneys office in the manner of executing the proper legal documents for the
   sentencing reduction and that all he needed was time to get this reduction sentence
   in play.

6. That, I will testify to these statements as I remember them and to the best of my ability and knowledge if a hearing is held necessary.

7. I understand that a false statement in this affidavit will subject me to the penalties of perjury. I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621, that the foregoing information contained herein this affidavit is true and correct.

FURTHER THE AFFIANT SAYETH NOT

11/03/07
Date

Mario Diaz
308 Carter Ct.
WoodDale, Illinois 60191-1900

Subscribed And Sworn Before Me This 3 RD Th Day Of November 2007

Notary Public

Mario Diaz

My Commission Expires  9 - 18 2010

**'OFFICIAL SEAL'**
**DONNA D'AMATO**
**NOTARY PUBLIC, STATE OF ILLINOIS**
**MY COMMISSION EXPIRES 09/18/2010**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DESI CANO,

      Petitioner,

—v—

UNITED STATES OF AMERICA,       **AFFIDAVIT OF LETICIA CANO**

      Respondent,

· · · · · · · · ·

I, Leticia Cano Being Duly Sworn Deposes And swears Under Oath And Under The
Penalty Of Perjury That The Following Statements Are True And Accurate To The
Best Of My Knowledge.

1.  That, I am Desi Cano's wife.

2.  That, this affidavit is in support of my Husbands motion pursuant to 28 U.S.C.
    § 2255 currently pending in the District Court.

3.  That, I spoke with Attorneys Robert Lucenti and Kevin Bolger's over telephone
    conversations in numerous time priors and after my husband Desi Cano's conviction
    and subsequent incarceration over his criminal case and sentencing options.

4.  That, after sentencing in the company of Silvia Diaz(Sister), Olga Augirre(Sister),
    Mario Diaz(Brother-In-Law), Robert Lucenti and Kevin Bolger's promised me that
    the sentence my husband(Desi Cano) received on February 19, 1999, would not be the
    actual sentence he would serve, because of a sentence reduction Desi Cano would be
    receiving and entitled.

5.  That, I was in attendance when my husband Desi Cano was sentenced on February 19,
    1999.

6.   That, I will testify to these statements as I remember them to the
     best of my ability and knowledge if a hearing is necessary and ordered.

7.   I, understand that a false statement in this affidavit will subject me to
     the penalties of perjury. I declare under the penalty of perjury pursuant
     to 28 U.S.C. § 1746 and 18 U.S.C. § 1621, that the foregoing information
     contained herein this affidavit is true and correct.


FURTHER THE AFFIANT SAYETH NOT

10 - 15 - 07
_____
Date

_____
Affiant -  Leticia Cano
           249 Cara Ln.
           WoodDale Illinois 60191


Subscribed And Sworn Before Me This 15 Th Day Of October 2007


_____
Notary Public

_____
Leticia Cano


My Commission Expires_____ 02-26-2010


```
················································
:      "OFFICIAL SEAL"                          :
:        ROCIO PULIDO                           :
:  NOTARY PUBLIC, STATE OF ILLINOIS             :
:  MY COMMISSION EXPIRES 02/26/2010             :
················································
```

Two Of Two

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DESI CANO,

        Petitioner,

-v-

UNITED STATES OF AMERICA,           **AFFIDAVIT OF MARIO DIAZ**

        Respondent,

                   . . . . . . . .

I, Mario Diaz Being Duly Sworn Deposes And Swears Under Oath And Under The Penalty Of Perjury That The Following Statements Are True And Accurate To The Best Of My Knowledge.

1. That, I am Desi Cano's Brother-In-Law in the form of my wife Silvia Diaz being Desi Cano's wife's sister.

2. That, I spoke numerous times with Kevin Bolger's and Robert Lucenti regarding my Brother-In-Laws criminal case and his sentence options.

3. That, Kevin Bolger's and Robert Lucenti assure me prior and after Desi Cano's sentencing that what ever sentence Desi Cano would receive, that sentence was not final due to Desi Cano being entitled to a sentence reduction in the future.

4. That, recently on July 30, 2007 I spoke with Kevin Bolger's via telephonic conversation which was recorded and submitted into evidence, and he specifically told me that he indeed had promised Desi Cano at MCC Chicago that his sentence would be reduced from 210 months to 120 months and that Kevin Bolger's was still working on the sentence reduction.

5. That, I was in attendance on February 19, 1999 when Desi Cano was sentenced to 210 months instead of the 120 months promised by Kevin Bolger's on the July 30, 2007 conversation.

6. That, on February 19, 1999 after Desi Cano was sentenced I accompanied Leticia Cano to speak with Kevin Bolger's and Robert Lucenti regarding the disappointing sentence imposed on Desi Cano. This is where I specifically heard Kevin Bolger's and Robert Lucenti telling Leticia Cano that she should not worry about the sentence imposed on her husband Desi Cano, since according to Bolger's and Lucenti that sentence was not the actual sentence Desi Cano would serve due to a reduction of sentence Desi Cano was entitled to.

7.   That, I will testify to these statements as I remember them to the best of my ability and knowledge if a hearing is necessary and ordered.

8.   I, understand that a false statement in this affidavit will subject me to the penalties of perjury. I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621, that the foregoing information contained herein this affidavit is true and correct.


FURTHER THE AFFIANT SAYETH NOT

10 / 16 / 07
_____
Date

_____
Affiant - Mario Diaz
         308 Carter Ct.
         WoodDale Illinois 60191-1900


Subscribed And Sworn Before Me This _16_Th Day Of October 2007


_____
Notary Public

_____
Mario Diaz


**"OFFICIAL SEAL"**
ROCIO PULIDO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 02/26/2010

My Commission Expires _02-26-2010_


Two Of Two

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DESI CANO,

      Petitioner,

-v-

UNITED STATES OF AMERICA,          **AFFIDAVIT OF SILVA DIAZ**

      Respondent,

                                  •••••••••

I, Silva Diaz Being Duly Sworn Deposes And Swears Under Oath And Under The Penalty Of Perjury That The Following Statements Are True And Accurate To The Best Of My Knowledge.

1. That, This affidavit is in support of Desi Cano's allegations in his § 2255 petition.

2. That, I am Desi Cano's Sister-In-Law in the form that Desi Cano's wife is my sister.

3. That, I was in attendance on Desi Cano's sentencing day of February 19, 1999 accompanying and supporting my sister Leticia Cano.

4. That, after Desi Cano was sentenced to 210 months, I accompanied my sister Leticia Cano to speak with Desi Cano's attorneys Kevin Bolger's and Robert Lucenti regarding the disappointing sentence Desi Cano was just imposed.

5. That, I was present and heard the conversation that assumed between my sister Leticia Cano and attorneys Kevin Bolger's and Robert Lucenti after Desi Cano's sentencing.

6. That, I specifically heard Kevin Bolger's and Robert Lucenti tell my sister Leticia Cano "that she should not worry about the sentence imposed on her husband" because according to the attorneys Desi Cano would not serve that sentence, because of a sentence reduction he would receive in the future.

7.  That, I will testify to these statements as I remember them to the best of my ability and knowledge if a hearing is necessary and ordered.

8.  I, understand that a false statement in this affidavit will subject me to the penalties of perjury. I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621, that the foregoing information contained herein this affidavit is true and correct.

FURTHER THE AFFIANT SAYETH NOT

_10/16/07_
Date

Affiant - Silvia Diaz
308 Carter Ct.
WoodDale Illinois 60191-1900

Subscribed And Sworn Before Me This _16_ Th Day Of October 2007

Notary Public

Silvia Diaz

*OFFICIAL SEAL*
ROCIO PULIDO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 02/26/2010

My Commission Expires _02-26-2010_

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DESI CANO,

       Petitioner,

-V-

UNITED STATES OF AMERICA,       **AFFIDAVIT OF OLGA AGUIRRE**

       Respondent,

. . . . . . . . . .

I, Olga Aguirre Being Duly Sworn Deposes And Swears Under Oath And Under The
Penalty Of Perjury That The Following Statements Are True And Accurate To The
Best Of My Knowledge.

1.    That, I am Desi Cano's Sister-In-Law in the form that Desi Cano's wife Leticia
    Cano is my sister.

2.    That, I was in attendance on February 19, 1999 at the United States Courthouse
    accompanying my sister Leticia Cano at Desi Cano's sentencing day.

3.    That, I accompanied my sister Leticia Cano when she spoke with attorneys Robert
    Lucenti and Kevin Bolger's after Desi Cano was sentenced to 210 months.

4.    That, I specifically heard Kevin Bolger's and Robert Lucenti tell my sister
    Leticia Cano that her husband would not serve the sentence imposed on him,
    because of some sentence reduction he was entitled to.

5.    That, I will testify to these statements as I remember them to the
    best of my ability and knowledge if a hearing is necessary and ordered.

6.    I, understand that a false statement in this affidavit will subject me to
    the penalties of perjury. I declare under the penalty of perjury pursuant
    to 28 U.S.C. § 1746 and 18 U.S.C. § 1621, that the foregoing information
    contained herein this affidavit is true

FURTHER THE AFFIANT SAYETH NOT

10/15/2007
Date

Affiant — Olga Aguirre
1911 High Grove Ln.
Palatine Illinois 60067

Subscribed And Sworn Before Me This____Th Day Of October 2007

Notary Public

Olga Aguirre

RICARDO CARRANZA
MY COMMISSION EXPIRES
NOVEMBER 2, 2011
NOTARY PUBLIC
OFFICIAL
SEAL
STATE OF ILLINOIS

My Commission Expires 11-02-2011

STATE OF ARIZONA )
)
COUNTY OF PIMA )            **AFFIDAVIT OF GUILLERMO G. CARRERA**
)

I, Guillermo G. Carrera Being Duly Sworn Deposes And Swears Under Oath And Under
The Penalty Of Perjury That The Following Statements Are True And Accurate To The
Best Of My Knowledge.

1.  That, I resided at 101 North Ave. in Addison Illinois from 1992 to 1999.

2.  That, my home telephone number was (630) 834-4326, while I resided at the above
    address. The telephone number was registered under my wife's name which is Agustina
    Gamboa.

3.  That, I am the individual who the Illinois base Drug Enforcement Agency ("DEA")
    suspected in being involved in drug activities in 1998 with Desi Cano.

4.  That, I have never participated in any cocaine or illegal drug transactions
    with Desi Cano or any other individual as Desi Cano's court documents indicate.

5.  That, I was interviewed and interrogated at my home in Addison Illinois in 1998
    by the Illinois base "DEA" regarding their suspicion of my participation in illegal
    drug activities. But my name was exonerated of any charges or suspicion of me being
    involved in any illegal drug activities.

6.  That, I will testify to these statements as I remember them and to the best of my
    ability and knowledge if a hearing necessary.

I understand that a false statement in this affidavit will subject me to the penalties
of perjury. I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 and
18 U.S.C. § 1621, that the foregoing information contained herein this affidavit is
true and correct.

FURTHER THE AFFIANT SAYETH NOT

_10/27/2007_
Date

_Guillermo G. Carrera_
Guillermo G. Carrera
6795 S. Avenida Del Abrazo
Tucson Arizona 85706

OCTOBER
Subscribed And Sworn Before Me This _27_ Th Day Of ~~November~~ 2007

_Guillermo G. Carrera_
Notary Public                          Guillermo G. Carrera

J. Angel Montenegro
Notary Public - Arizona
Pima County
My Commission Expires
June 25, 2010

My Commission Expires _JUNE 25 2010_