UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 C 6444 |
| | ) | No. 98 CR 712-1 |
| v. | ) | |
| | ) | Honorable Suzanne B. Conlon |
| | ) | |
| DESI CANO | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION PURSUANT TO 28 U.S.C. § 2255

The UNITED STATES OF AMERICA, by and through its attorney, PATRICK J.
FITZGERALD, United States Attorney for the Northern District of Illinois, hereby submits its
response to defendant Desi Cano's motion pursuant to 28 U.S.C. § 2255.  In his motion, defendant
asserts essentially two claims:  (1) a due process violation resulting from the government's breach
of its alleged promise to file a Rule 35 motion for reduction of sentence,[1] and (2) ineffective
assistance of counsel for failure to file a timely Notice of Appeal.   As a result, defendant requests
that he be permitted to file a Notice of Appeal now – over eight years after his conviction became
final.  Defendant argues that if his request is granted, he will assert the following issues on appeal:
(a) his attorney failed to furnish him with a copy of his Presentence Investigation Report ("PSR");
(b) this Court erred in finding that he played a managerial or supervisory role in the drug conspiracy;
(c) this Court erred in determining the drug quantity for which defendant is responsible; and (d) this
Court erred in sentencing defendant to a life term of supervised release.  Because defendant's motion

---

[1]  While defendant does not expressly assert a ground for violation of his due process
rights, defendant appears to make this argument.  For example, in his motion, defendant states
that it is possible that "the United States Attorneys office made an arrangement and or promise to
Mr. Desi Cano in exchange for his guilty plea which has not been fulfilled as of yet."  Def.Br. at
7.  Given his status as a *pro se* litigant, the government will respond to this and other similar
statements as if they were expressly asserted as grounds for his post-conviction relief.

is procedurally barred, the Government respectfully requests that this Court deny defendant's motion without a hearing. *Menzer v. United States*, 200 F.3d 1000, 1006 (7th Cir. 1999) ("[A] judge should dismiss the petition without a hearing where it plainly appears from the facts of the motion and any annexed exhibits and the prior proceedings in the case [that] the movant is not entitled to relief") (internal quotation marks and ellipses omitted).

## SUMMARY OF PRIOR PROCEEDINGS

On November 12, 1998, the defendant pled guilty to conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (2). After apprising defendant of his rights and accepting his waiver of those rights, the Court accepted defendant's plea of guilty and entered judgment against him.

On February 19, 1999, the Court sentenced defendant to a total term of imprisonment of 210 months' imprisonment, followed by a life-time term of supervised release. Defendant did not appeal. Thus, defendant's conviction became final on February 29, 1999. Defendant first filed the instant petition on November 14, 2007.[2]

## DEFENDANT'S SECTION 2255 MOTION

Defendant, via the instant motion, claims that he should be permitted to file an untimely Notice of Appeal, arguing both that his due process rights were violated when the government breached its alleged promise to file a Rule 35 motion to reduce his sentence, and that his attorneys ineffectively assisted him when they allegedly advised him that he should not file a Notice of Appeal. Defendant's motion should be denied because it is untimely. Defendant had one year

---

[2] Defendant filed the instant motion for the first time on November 14, 2007. (Case No. 07 C 6444, Dkt. No. 1.) This Court dismissed the motion without prejudice for failure to complete necessary forms. (Case No. 07 C 6444, Dkt. No. 8.) Defendant then re-filed this motion on December 10, 2007. (Case No. 07 C 6444, Dkt. No. 11.)

to file his motion after his conviction became "final"– *i.e.*, until February 29, 2000.  Defendant did

not file his § 2255 motion until November 14, 2007 – well outside the one-year time limit.  Further,

contrary to defendant's argument, he did not exercise due diligence in learning the facts that led to

the instant motion.  In addition, the government notes that if he were permitted to file an untimely

Notice of Appeal, the arguments he intends to assert on appeal are without merit.

## ARGUMENT

### I.    STATUTE OF LIMITATIONS FOR 28 U.S.C. § 2255 MOTION.

In Section 105 of the Antiterrorism and Effective Death Penalty Act of 1996, (AEDPA),

Congress established a 1-year period of limitation governing motions for collateral relief under 28

U.S.C. § 2255.  The one-year period runs from the latest of four specified events: "(1) the date on

which the judgment of conviction becomes final; (2) the date on which the impediment to making

a motion created by governmental action in violation of the Constitution or laws of the United States

is removed, if the movant was prevented from making a motion by such governmental action; (3)

the date on which the right asserted was initially recognized by the Supreme Court, if that right has

been newly recognized by the Supreme Court and made retroactively applicable to cases on

collateral review; or (4) the date on which the facts supporting the claim or claims presented could

have been discovered through the exercise of due diligence."  28 U.S.C. § 2255.  The petitioner's

conviction became final on February 29, 1999, ten days after judgment was entered against him.

Thus, defendant's 28 U.S.C. § 2255 motion is not filed within one year from the date on which the

judgment of conviction becomes final.

Defendant, however, argues that his motion is timely because "the date on which the facts

supporting the claim or claims presented could have been discovered through the exercise of due

diligence," is less than one year from the date of filing.  Specifically, defendant claims that, since

he entered his plea of guilty, his attorneys have repeatedly assured him that the government did, or

will, file a Rule 35 motion to reduce his sentence.  Most recently, defendant's attorneys allegedly engaged in recorded telephone conversations with defendant's family members, during which defendant's attorneys repeated these assurances.[3]

The Supreme Court has discussed what constitutes "due diligence" in the context of a 28 U.S.C. § 2255 motion.  *Johnson v. United States*, 544 U.S. 295 (2005).  In *Johnson*, the Court held that diligence is shown by the taking of "prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest" in challenging his sentence or conviction. *Id.* at 308. The Court goes on to state that the purpose of this rule is to preserve "the interest in the finality of sentences imposed by its own courts," and that due diligence is not merely a suggestion, but an "explicit demand" of 28 U.S.C. § 2255.  *Id.* at 309.  Further, the Court stated that it will not excuse the lack of diligence merely because the petitioner is acting *pro se* – "we have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."  *Id.* at 311.

Applying these principles, the Court held that Johnson failed to exercise due diligence and thus his 28 U.S.C. § 2255 was deemed untimely.  Specifically, the defendant was subject to the career offender enhancement at the time of his sentencing.  *Id.*  However, one of the state convictions relied on in applying that enhancement was improper and should have been vacated. *Id.*  Three years after his sentencing, defendant moved in state court to vacate that conviction and was ultimately successful.  *Id.*  The Court found that defendant was not diligent in attacking that state conviction, because he learned that the conviction was used as an enhancement at the time of

---

[3] If defendant is entitled to an evidentiary hearing, which the government asserts that he is not, the government reserves the right to object to the admissibility of the recorded telephone conversations.

his sentencing. *Id.* The Court found that had defendant's motion been timely, it would have been successful. *Id.* at 302-03.

Like Johnson, defendant did nothing to inform this Court of his alleged claims for several years after learning of the facts to support them. Thus, defendant's motion is untimely.

## II.    DEFENDANT DID NOT EXERCISE DUE DILIGENCE IN FILING HIS ALLEGED DUE PROCESS CLAIM.

Defendant seems to assert a due process claim based on the government's breach of its alleged promise to file a Rule 35 motion. Defendant's claim, however, is untimely given that he failed to exercise due diligence in determining whether the government had in fact made such a promise or why they had not filed a Rule 35 motion.

A Rule 35 motion must be filed by the government within one year of defendant's sentencing. Fed. R. Crim. Pro. 35(b)(1). In this case, however, on February 18, 2000, the government filed a motion to stay the time within which it may file a Rule 35 motion. (Case No. 98 CR 712, Dkt. No. 85.) This Court granted that motion on February 25, 2000. (Case No. 98 CR 712, Dkt. No. 86.) In its motion, the government states that defendant "has been cooperating with the government," and "the government anticipates utilizing the defendant's testimony." (Case No. 98 CR 712, Dkt. No. 85). This motion does not state, however, that the government actually intended to file a Rule 35 motion or, more importantly, that defendant qualified for a Rule 35 sentence reduction at that time.

Indeed, the facts show that defendant was not eligible for a Rule 35 motion at the time the government filed its motion to stay, but, according to defendant's own admission, was only planning on sitting for a proffer in the future. Def.Br. at 3. Defendant did eventually sit for one proffer session on May 15, 2001 – after his sentencing and after the filing of the government's motion to stay. *See* Report of DEA Investigation, attached hereto as Exhibit A. Defendant did not cooperate

with the government again after that May 15, 2001 proffer. Thus, no later than one year after the date of that proffer session, defendant should have realized that the government had allegedly breached its promise to file a Rule 35 motion. Defendant has access to publicly filed documents and could have easily learned that no Rule 35 motion had been filed. Defendant should have checked to determine whether a Rule 35 motion had been filed and then either filed a motion with this Court or attempted to communicate directly with the government. Because defendant did not do any of those things, but continued to rely on the uncorroborated, and at that point unlikely, representations of his counsel without conducting any independent investigation of his own, defendant's motion is untimely.

If this Court determines that defendant's motion relating to his due process claim is not untimely, the government agrees that an evidentiary hearing should be held. It should be noted that, at an evidentiary hearing, the government will establish that no promise was made to defendant regarding a Rule 35 sentence reduction. First, Lawrence Beaumont, a former Assistant United States Attorney, would testify that he was assigned to defendant's case in approximately August 1999, after defendant had been sentenced. *See* Affidavit of Lawrence Beaumont, attached hereto as Exhibit B. Mr. Beaumont would further testify that after he was assigned to defendant's case, defendant's counsel represented that defendant had cooperated with the government. *Id.* at ¶3. Based on this representation, Mr. Beaumont filed the motion to stay the time within which the government may file a Rule 35 motion referenced above so that he could investigate whether defendant's counsel's claims were accurate. *Id.* As part of that investigation, Mr. Beaumont contacted Ronald May, the original Assistant United States Attorney assigned to defendant's case. *Id.* At that time, Mr. May stated that he did not know anything about a Rule 35 motion and referred Mr. Beaumont to the case agent, Charles Baumgartner. *Id.* Mr. Beaumont then contacted Agent Baumgartner, who reported that he also knew nothing about a Rule 35 motion and that, to the best of his knowledge, defendant

did not qualify for a Rule 35 motion at that time.  *Id.*  Mr. Beaumont would further testify that, during the time he was assigned to defendant's case, defendant did not offer any cooperation to the government that would qualify him for a Rule 35 motion.  *Id.* at ¶4.

Further, Charles Baumgartner would testify that defendant did not sit for a proffer session until May 15, 2001.  *See* Affidavit of Charles Baumgartner, attached hereto as Exhibit C.  Further, at his proffer session, defendant did not provide any information that substantially assisted the government.  *Id.* at ¶¶3, 6.  The information provided by defendant was wholly repetitive of information previously known to the government or otherwise was not useful.  *Id.* at ¶6.  Thus, defendant offered nothing new to the government that could have been used to assist them in any way.  Defendant's motion should be denied.

### III. DEFENDANT DID NOT EXERCISE DUE DILIGENCE IN FILING HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

Defendant's claim for ineffective assistance of counsel should be deemed untimely for largely the same reasons asserted above.  Assuming the truth of defendant's allegations that his attorneys repeatedly instructed him not to file a Notice of Appeal because a Rule 35 motion was forthcoming from the government, defendant, exercising due diligence, should have realized that he had a claim for ineffective assistance of counsel prior to 2007.  Again, at the very least, defendant was on notice on May 15, 2002 – one year after his proffer session – that the government had not filed, and was not going to file, a Rule 35 motion.  Thus, he should have known then that he had a claim for ineffective assistance of counsel based on his attorney's representations.

In addition, defendant claims that his attorneys told him not to file a Notice of Appeal at his 1999 sentencing.  However, at the time of sentencing, defendant should have known that he was not eligible for a Rule 35 reduction.  A review of Rule 35 reveals that a sentence will not be reduced merely because a defendant cooperates with the government.  Rather, that cooperation must

substantially assist the government.  Therefore, because he had not yet assisted the government, defendant should have known, at the time of his sentencing, that he was not guaranteed a Rule 35 motion merely because he intended to sit for a proffer sometime in the future.  Thus, defendant should have been on notice as far back as his sentencing of his ineffective assistance of counsel claim, given that his attorneys were allegedly telling him that he qualified for something that he should have known he did not.  Accordingly, defendant's motion is untimely.

If this Court determines that defendant's claim for ineffective assistance of counsel is timely, the government concedes ineffective assistance of counsel.  In that instance, the proper remedy is to vacate defendant's conviction and then immediately reinstate it so that defendant has the opportunity to file a timely Notice of Appeal.

It should be noted, however, that if defendant is permitted to file a Notice of Appeal, his arguments on appeal will fail.[4]  The following is only a brief summary of the government's position on defendant's arguments and does not include the entirety of the government's response should defendant ultimately be permitted to appeal.

### A.    Defendant's Claim That He Did Not Read the PSR is Without Merit.

Defendant does not assert any error with respect to his alleged failure to read his PSR. Defendant states that the district court was required to ask three questions during his sentencing as it pertains to the pre-investigation sentencing report: "1) whether the defendant has had an opportunity to read the PSR; 2) whether the defendant and defense counsel have discussed it; and

---

[4]  Defendant seems to assert the following issues as independent grounds under his 28 U.S.C. § 2255.  However, these issues are indisputably time-barred given that defendant was made aware of the facts pertaining to these claims at the time of his sentencing.  Accordingly, given defendant's *pro se* status, the government will assume that defendant intends to assert those arguments on appeal.

3) whether the defendant wishes to challenge any facts contained in the Presentence Investigation Report." *United States v. Hughes*, 213 F.3d 323 (7th Cir. 2000).

At defendant's sentencing hearing, the Court specifically asked whether "you had a chance to go through the presentence report carefully, Mr. Bolger, with your client," and whether there were "any additions or corrections to the presentence report." Def.Br. at 15. While the Court did not specifically ask whether the defendant had read the PSR, this Court's question regarding whether defendant's counsel had a chance to "go through" the report "carefully" with his client encompasses both of the first two questions. Going through the report "carefully" necessarily would require reading the report. Defendant was present in court when the Court directed this question to defendant's counsel, and he was free to assert that he had not yet had a chance to read the PSR. Defendant, however, said nothing. Defendant's argument will fail on appeal.

    **B.**    **Defendant's Claims that the Court's Factual Findings at Sentencing Constitute Error are Without Merit.**

Defendant contends that this Court erred in finding both that he played a managerial or supervisory role in the drug conspiracy and in determining the drug quantity for which he would be held responsible. Both arguments are without merit and will fail on appeal.

Defendant faces an uphill battle in establishing that the Court's factual findings at sentencing should be reversed. In reviewing a district court's sentencing determinations, the Seventh Circuit reviews the findings of fact underlying the application of the Sentencing Guidelines for clear error. *See United States v. Cleggett*, 179 F.3d 1051, 1054 (7th Cir. 1999) (citing *United States v. Villarreal*, 977 F.2d 1077, 1080 (7th Cir. 1992)). A finding of fact is clearly erroneous only when, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. McEntire*, 153 F.3d 424, 435 (7th Cir. 1998). Congress has

mandated such a deferential standard of review and this Court "does not second-guess the sentencing judge." *Cleggett*, 179 F.3d at 1054 (citing *United States v. Garcia*, 66 F.3d 851, 856 (7th Cir. 1995)).

Further, "[a] sentencing court may consider whatever information it possesses, as long as this evidence includes sufficient indicia of reliability to support its probable accuracy." *United States v. Bailey*, 227 F.3d 792, 800 (7th Cir. 2000) (internal quotations omitted). The government's burden at sentencing is eased by the fact that the Federal Rules of Evidence do not apply, and the district court is thus free to consider a wide range of information, including hearsay evidence. *McEntire*, 153 F.3d at 435. Thus, while a criminal defendant does have a due process right to be sentenced on the basis of accurate information, *see United States v. Westbrook*, 986 F.2d 180, 183 (7th Cir. 1993), it is well established that the evidentiary standards that apply at sentencing are not as stringent as those applicable at criminal trial. *Cleggett*, 179 F.3d at 1054. When sentencing a defendant, a "judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it came." *Id.* (citing *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir. 1995)).

This Court relied on reliable information in determining both that defendant played a managerial or supervisory role in the drug conspiracy and the drug quantity. Specifically, as to the managerial or supervisory enhancement, the Court relied on "intercepted telephone conversations." Def.Br. at 18. As for the drug amount, the Court relied on "the government's version, the tape-recorded telephone conversations and [defendant's supplier's] drug ledger." Def.Br. at 26. Accordingly, on appeal, the government will establish that the Court's factual findings were based on reliable and credible information. The arguments made by defendant to the contrary are unpersuasive. Further, in regard to his managerial or supervisory role argument, defendant cites to evidence that is not in the record before this Court. Such evidence would not be considered on appeal and thus is inapplicable.

**C.    Defendant's Claim that the Court Erred in Imposing a Life Sentence of Supervised Release is Without Merit.**

Defendant claims that the "maximum statutory term of supervised release applicable to Desi Cano here is five years." Def.Br. at 25. Defendant is mistaken. Rather, 21 U.S.C. § 841(b)(1)(A), which defendant correctly asserts applies to his case, includes a term of supervised release of "at least 5 years." Thus, contrary to defendant's representations, the <u>minimum</u> mandatory term of supervised release is five years.

## CONCLUSION

In sum, the defendant makes an extraordinary, yet untimely, request from this Court. Accordingly, this Court should dismiss defendant's motion.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

Dated: February 14, 2008

By:    /s/    Bethany K. Biesenthal
BETHANY K. BIESENTHAL
Assistant United States Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 886-7629

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

**Government's Response to Defendant's Motion Pursuant to 28 U.S.C. § 2255**

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by first-class mail on February 14, 2008, to the following non-ECF filers:

Desi Cano
Reg # 10121-424-Dorm-208
Duluth Federal Prison Camp
P.O. Box 1000
Duluth, MN 55814

By:    /s/   Bethany K. Biesenthal
BETHANY K. BIESENTHAL
Assistant United States Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 886-7629